# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ELECTRICAL CONSTRUCTION INDUSTRY**
**PREFUNDING CREDIT REIMBURSEMENT PROGRAM,**
et al.,

    Plaintiffs,

  v.                                    Case No. 17-CV-1576

**VETERANS ELECTRIC, LLC,**

    Defendant.

---

## DECISION AND ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND PLAINTIFFS' MOTION TO DISMISS CLAIMS ONE AND TWO

---

        Electrical Construction Industry Prefunding Credit Reimbursement Program, a/k/a Electrical Construction Industry Health & Welfare Plan, Electrical Construction Industry Annuity Plan, Electrical Construction Industry Pension Plan, Milwaukee Electrical Joint Apprenticeship & Training Trust Fund, and Electrical Construction Industry Vacation – Holiday Plan (the "Funds"), and Robert Rayburn and Dean Warsh, in their capacity as Trustees of the Funds, commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging in Claims One and Two of their complaint that Veterans Electric, LLC ("Veterans") is delinquent in its payments to the Funds and alleging in Claim Three that Veterans has failed to submit to an audit of its full books and records to determine the amounts due and owing the Funds.

        Presently before me are Veterans' motion for judgment on the pleadings (Docket # 12), Veterans' motion for summary judgment (Docket # 26), the Funds' motion for partial

summary judgment (Docket # 29), and the Funds' motion to dismiss Claims One and Two of the complaint (Docket # 42.) For the reasons more fully explained below, Veterans' motion for judgment on the pleadings is granted in part and denied in part, Veterans' motion for summary judgment is granted in part and denied in part, the Funds' motion for partial summary judgment is granted in part and denied in part, and the Funds' motion to dismiss counts one and two of the complaint is denied; however, the Funds are permitted to amend their complaint to delete Claims One and Two with prejudice.

   1. *The Funds' Motion to Dismiss Claims One and Two of the Complaint*

  The Funds move to voluntarily dismiss Claim One (Violation of ERISA Section 515) and Claim Two (Breach of Trust Agreement Rules (Benefit Delinquency)) of their complaint pursuant to Fed. R. Civ. P. 41(a)(2). The Funds argue that they seek dismissal of these causes of action because of newly discovered information produced by Veterans on June 28, 2018. (Pls.' Br. in Supp. of Mot. to Dismiss at 2, Docket # 42.) The Funds argue that once their auditor received this discovery, the auditor finalized and completed a report on July 2, 2018 in which it was determined that no further contributions were owed. (*Id.*) The Funds state that because no further amounts were found owing, they request the dismissal of Claims One and Two, which are related to delinquent contributions. (*Id.*)

  Veterans opposes this motion, arguing that the Funds cannot dismiss single counts under Rule 41(a), which speaks to dismissal of "an action." (Def.'s Resp. to Mot. to Dismiss at 4, Docket # 48.) Veterans further argues that it has incurred significant expenses defending Claims One and Two in its motion for judgment on the pleadings and summary judgment motion and if the Court is inclined to grant the motion, dismissal should be with

prejudice. (*Id.* at 6-7.) The Funds reply that they are willing to dismiss Claims One and Two with prejudice. (Pls.' Reply Br. at 4, Docket # 49.)

Veterans is correct that Rule 41(a)(2) speaks solely to the dismissal of "an action," not a single claim. Thus, it is improper to utilize Rule 41(a)(2) to dismiss only Claims One and Two. However, "[t]he motion raises a technical procedural problem that is easy to resolve" by converting the Funds' motion to voluntarily dismiss Claims One and Two to a motion to amend the complaint pursuant to Rule 15(a). *See Bibbs v. Newman*, 997 F. Supp. 1174, 1177 (S.D. Ind. 1998) ("A motion to dismiss voluntarily a single claim in a multi-count complaint is more properly treated as an amendment to the original complaint under Fed. R. Civ. P. 15(a).").

Rule 15(a) provides that after a responsive pleading has been served a "party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Because the Funds moved to withdraw Claims One and Two after Veterans moved for summary judgment, it would be unfair to Veterans to leave open the possibility that the Funds could raise these claims again. Further, the Funds do not object to dismissal of these claims with prejudice. Accordingly, the Funds' complaint will be deemed amended to delete Claims One and Two; however, I make clear that Claims One and Two are dismissed with prejudice. Veterans also requests its attorneys' fees; however, because Claims One and Two are being dismissed with prejudice and because Veterans can still pursue its alleged damages, including attorneys' fees, under Claim Three and its counterclaim, I will not impose fees or costs for opposing the Funds' motion to dismiss.

*2.    Veterans' Motion for Judgment on the Pleadings*[1]

2.1    Judgment on the Pleadings Standard

A motion for judgment on the pleadings under Rule 12(c) is granted "only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (internal citations omitted). The moving party should be "clearly entitled to judgment." *Edmonds v. United States*, 148 F. Supp. 185, 186 (E.D. Wis. 1957). To succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved." *Northern Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. Further, the complaint must be construed in the manner most favorable to the nonmoving party. *Id.* (citing *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995)). A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is decided in the same manner as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* Although the court may not look beyond the pleadings in determining the motion, the court may take into consideration documents incorporated by reference to the pleadings. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

2.2    Factual Background

The Funds allege that Veterans is an employer and party to a collective bargaining agreement ("CBA"), identified as the Inside Wireman Agreement between Local No. 494, International Brotherhood of Electrical Workers, AFL-CIO ("Local 494") and Electrical

---

[1] Veterans has also moved for summary judgment dismissing the Funds' Claim Three and for judgment in its favor on its breach of contract counterclaim. The Funds have moved for summary judgment in their favor on Claim Three and to dismiss Veterans' counterclaim. The arguments made by both parties are virtually identical in both the summary judgment filings and the motion for judgment on the pleadings; thus, disposition of Veterans' motion for judgment on the pleadings will also dispose of both parties' motions for summary judgment as to Claim Three and the counterclaim.

Contractors Association Milwaukee Chapter, N.E.C.A., Inc. (Compl. ¶ 6, Docket # 1.) The agreement was originally signed by Local 494 and Veterans on December 21, 2009. (*Id.*) Local 494 is a labor organization which represents, for purposes of collective bargaining, certain employees of Veterans, and employees of other employers, in industries affecting interstate commerce. (*Id.*)

The Funds allege that pursuant to the CBA, Veterans agreed to make timely payments to the plaintiff trust funds for each employee covered by the agreement. (*Id.* ¶ 7.) The Funds further allege that by execution of the agreement, Veterans adopted the trust agreements and amendments thereof which establish and govern the Funds and are necessary for their administration. (*Id.*) The Funds allege that Veterans refused to submit to a standard audit for the period of January 1, 2016 to the present with the representatives of the Funds despite the Funds' authority to perform such an audit. (*Id.* ¶ 15.)

2.3 Claim Three – Scope of Trustees' Audit Authority

In Claim Three of their complaint, the Funds allege that Veterans has refused to submit to an audit for the period of January 1, 2016 to the present, despite the Funds having authority to perform such an audit. (*Id.* ¶ 30.) The Funds demand access to Veterans' "full books and records" to perform an audit to determine amounts due and owing the Funds. (*Id.*) The Funds allege that they have a legal right to inspect all payroll records of the employer, including the records of employees who are not participants in the Funds. (*Id.*) Veterans argues Claim Three of the Funds' complaint must be dismissed because the plain language of the collective bargaining agreement restricts document access to Local 494 members. (Def.'s Br. in Supp. of Judg. on the Pleadings at 12, Docket # 13.)

5

Collective bargaining agreements, including those establishing ERISA plans, are interpreted according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015). "[A]s with any other contract, the parties' intentions control . . . . Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id.* (internal quotations and citations omitted).

"Ambiguity," in a collective bargaining agreement context, is defined as "something that makes it possible to interpret a document reasonably in more than one way." *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 832 (7th Cir. 2016) (internal quotation and citation omitted). "[T]here must be either contractual language on which to hang the label of ambiguous or some yawning void . . . that cries out for an implied term. Extrinsic evidence should not be used to add terms to a contract that is plausibly complete without them." *Id.* (internal quotation and citation omitted).

The CBA at issue in this case provides as follows as to the Funds' audit authority:

> <u>Section 14.05</u> The Employer shall promptly furnish to the authorized certified public accountant auditors employed by the Trustees of any fringe benefit fund, on demand, all necessary employment, personnel or payroll records, and these records only, relating to its former and present employees covered by this Agreement, including any relevant information that may be required in connection with the administration of the fringe benefit fund, for their examination, whenever such examination is deemed necessary by the Trustees.

(Collective Bargaining Agreement, Docket # 13-1 at 37.) Thus, the plain language of the CBA provides that the Funds have the authority to audit "all necessary employment, personnel or payroll records, and these records only, relating to its former and present

employees covered by this Agreement." The Funds, therefore, are entitled to documents related to "employees covered by this Agreement." The issue, then, is what constitutes an "employee covered by this Agreement"?

Veterans argues that the term "employees covered by this Agreement" is defined by Section 3.07 of the CBA which determines "Jurisdiction" and states that "[t]his Agreement shall be effective on all inside electrical construction work in Milwaukee, Waukesha, Washington and Ozaukee Counties in the State of Wisconsin." (Docket # 13-1 at 9.) Veterans argues that employees "that do not perform inside electrical work within the scope of Section 3.07, such as supervisors, administrative personnel, or executives, are therefore not employees 'covered by this Agreement.'" (Def.'s Br. in Supp. of Judg. on the Pleadings at 18, Docket # 13) (emphasis in original).

The Funds argue that Section 3.07 does not alone dictate who is an employee "covered by this Agreement," and points to Section 14.02 which provides as follows:

> Section 14.02 The Employer's obligation, under this Agreement, to make payments and contributions to fringe benefit funds for all employees covered by this Agreement, applies to all employees regardless of membership or non-membership in the Union.
>
> No payments shall be made hereunder on behalf of sole proprietors, partners, or corporate officers who hold common stock in the employing corporation, for work performed in a classification subject to the contributory provisions of this agreement, nor shall they be in covered employment.

(Docket # 13-1 at 36.) The Funds argue that Section 14.02 specifically contemplates that non-union employees may be covered by the CBA. (Pl.'s Resp. Br. to Judg. on the Pleadings at 19, Docket # 14.) The Funds further argue that Section 14.05's provision requiring Veterans to provide "any relevant information that may be required in connection

7

with the administration of the fringe benefit fund," allows for the audit of all employee records because this information is necessary to ensure that proper contributions are being paid. (*Id.*) Although in its opening brief Veterans argues the CBA restricts access to Local 494 members (Def.'s Br. in Supp. of Judg. on the Pleadings at 12, Docket # 13), in its reply brief, Veterans agrees that the employees' records subject to audit is not defined by union membership and acknowledges that pursuant to Section 14.02, non-union employees may nevertheless be "covered employees" (Def.'s Reply Br. at 8, Docket # 17). Veterans argues, however, that it is a distinction without a difference in this case because Veterans does not employ non-union "covered" employees. (*Id.*)

Both parties cite *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559 (1985) in support of their respective positions. In *Cent. States*, the question before the Court was whether an employer who participates in a multiemployer benefit plan governed by ERISA must allow the plan to conduct an audit involving the records of employees who the employer denies are participants in the plan. *Id.* at 561. The collective bargaining agreement at issue in *Cent. States* required each employer to make weekly contributions to Central States (the multiemployer benefit plan) for each employee who performed work covered by the CBA. *Id.* at 562. The trust agreement contained a specific grant of power to the trustees to demand and examine employer records. *Id.* at 566. The agreement stated that each employer "shall promptly furnish to the Trustees, upon reasonable demand the names and current addresses of its Employees, their Social Security numbers, the hours worked by each Employee and past industry employment history in its files and such other information as the Trustees may reasonably require in connection with the administration of the Trust." *Id.*

The Court held that the audit requested by the plan was "well within the authority of the trustees as outlined in the trust documents," *id.* at 581, meaning the trustees could audit records of employees who the employer denied were participants in the plan. In so holding, the Court considered the background and purpose of ERISA and noted that ERISA "assumes the trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries, and that trustees will take steps to identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights under the trust's terms." *Id.* at 571-72.

The Court specifically noted, however, that it was not determining whether ERISA would independently confer on the trustees a right to perform the sort of audit demanded in this case in the face of trust documents that explicitly limited the audit powers of the trustees. *Id.* at 581. Notably, in his dissent, Justice Stevens stated that in his opinion, the right to conduct an audit must be granted by contract and is not conferred by ERISA. *Id.* at 583 (Stevens, J., dissenting in part). He stated that his "disagreement with the Court is based on our differing interpretations of the particular contract documents in this case." *Id.* Justice Stevens explained that the term "Employees" was specifically defined in the contract and did not include *all* employees; rather, the term "Employees" was defined as "persons who are both employed pursuant to the collective-bargaining agreement and covered by the pension plan." *Id.* Thus, Justice Stevens noted that the "trustees have power to audit personnel records only of *covered* employees." *Id.* (emphasis in original).

Thus, although the majority seems to indicate that perhaps ERISA would not grant trustees the right to audit all employee documents if the contract at issue explicitly limited the trustees' audit authority, the documents at issue in *Cent. States* did, in fact (at least

9

according to the dissent), limit the trustees' audit authority. Even considering *Cent. States*, subsequent lower court decisions have looked to the relevant contract documents to determine the scope of the trustees' audit authority. *See, e.g.*, *Wojciechowski v. Boening Bros.*, No. 09 CV 2579 DRH GRB, 2012 WL 912968, at *7 (E.D.N.Y. Mar. 16, 2012) (finding because the CBA obligated the employer to make contributions to the Funds for "regular employees" who are defined as bargaining unit members who have completed a specified term of service, an examination of the employer's documents that reflect payments made to non-bargaining unit employees and independent contractors would not allow the Funds to "identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights under the trust's terms" as stated in *Cent. States*); *Cement Masons Local 527 v. Buffa Concrete Contractors, Inc.*, No. 4:10-CV-1971 CEJ, 2011 WL 719205, at *2 (E.D. Mo. Feb. 23, 2011) (considering *Cent. States*, the court found that a trustee's "authority is limited, however, by the terms of the parties' agreements. Thus, where the plan documents limited the scope of the trustees' duties to eligible employees and beneficiaries, the scope of an audit could not be expanded to include non-eligible employees"); *Nw. Ohio Plumber & Pipefitters Local 50 Employee Benefits Plans v. Helm & Assocs., Inc.*, No. 3:06CV1395, 2007 WL 2571964, at *4 (N.D. Ohio Aug. 31, 2007) ("The trust agreement in this case makes it clear that the trustee's duty is exclusively and solely to eligible employees and participating employers . . . [c]onsequently, the only relevant audit in this case is for eligible employees as defined under the plan.").

Given the Supreme Court's more recent statement in *Tackett* that CBAs should be interpreted according to ordinary principles of contract law when those principles are not inconsistent with federal labor policy, 135 S. Ct. at 933, I look to the plain language of the

10

CBA in this case to determine the scope of the Funds' audit authority. Again, Section 14.05, which governs the trustees' audit authority, states that the employers shall furnish documents related to former and present employees *covered by this Agreement*. Article Fourteen, in general, of the CBA governs enforcement of payments to fringe benefit funds. The fringe benefit funds in the CBA require the employers to contribute funds for employees "covered under this agreement." (*See* Section 8.02, Section 9.01, Section 10.01, and Section 11.02 of CBA, Docket # 13-1 at 25-28.) Thus, as in *Wojciechowski,* because employers under the CBA at issue in this case are required to make contributions to the Funds for employees "covered under this agreement," it follows, and the plain language of CBA dictates, that the trustees' audit authority is limited to the records of employees "covered by this Agreement." (Section 14.05 of CBA, Docket # 13-1 at 37.) The Funds do not dispute that the CBA applies to all employees who erect, install, alter, repair, serve, dismantle, or maintain electrical wiring, devices, appliances, or equipment and sound and public address systems, citing Section 3.02 of the CBA. (Pl.'s Proposed Findings of Fact ¶ 15, Docket # 31.) Thus, under the plain language of the CBA, the Funds are not entitled to audit the records of those employees concededly not covered by the CBA, such as the high school student who cleans and organizes the shop. (Countercl. ¶ 1, Docket # 6.)

As such, the Funds are not entitled to audit the records of all of Veterans' employees. It may only audit the records of those employees covered by the CBA. Thus, Veterans is entitled to judgment on the pleadings (and summary judgment) as to Claim Three of the Funds' complaint. The Funds' motion for summary judgment as to Claim Three is denied.

### 2.4 Veterans' Counterclaim – Breach of Contract

Veterans alleges the Funds breached the CBA by demanding information outside the scope of the audit provisions of the CBA and by inaccurately alleging in the complaint that Veterans is delinquent in its payments to the Funds, and demanding unspecified amounts that are not due under the CBA or the Trust Documents. (Countercl. ¶¶ 19-20, Docket # 6.) The Funds argues Veterans' counterclaim must be dismissed because the Funds are not a party to the CBA and because Veterans failed to identify any obligations in the CBA the Funds allegedly breached. (Pl.'s Br. in Supp. of Partial S.J. at 21, Docket # 30.) Veterans does not dispute the Funds are not parties to the CBA, but argues that the Funds are liable as either third-party beneficiaries to the CBA or under theories of agency or assumption. (Def.'s Br. in Supp. of Judg. on the Pleadings at 20-21, Docket # 13.)

Veterans relies on *Lewis v. Benedict Coal Corp.*, 361 U.S. 459 (1960) to support its proposition that the Funds are liable as third-party beneficiaries to the CBA. But *Lewis* does not stand for this proposition. In *Lewis*, the trustees of the fund brought an action against an employer to recover underpayments allegedly due the fund. *Id.* at 461-62. The employer's main defense was that it was excused from paying the trustees (as third-party beneficiaries of the CBA) because the union violated the CBA. *Id.* at 462. The Court disagreed, and in doing so, noted that:

> [A] third-party beneficiary has made no promises and therefore has breached no duty to the promisor. Accordingly, to hold, as the lower courts in this case did, that a promisor may 'set off' the damages caused by the promisee's breach is actually to read the contract, which is the measure of the third party's rights, as so providing. In other words, although the promisor's duty to perform has become fixed by the occurrence of applicable conditions precedent, the parties may be taken to have agreed that the extent of the promisor's duty to the third party will be affected by the promisee's breach of contract. When it is said that 'it

> may be just' to make the third party subject to the counterclaim, what must be meant is that a court should infer an intention of the promisor and promisee that the third party's rights be so limited.

*Id.* at 467. The Court went on to say that while that "may be a desirable rule of construction to apply to third-party beneficiary contract where the promisor's interest in or connection with the third party, in contrast with the promisee's, begins with the promise and ends with its performance," *id.*, the Court noted that a collective bargaining agreement is "not a typical third-party beneficiary contract," *id.* at 468. In disallowing the offset, the Court noted that "the national labor policy becomes an important consideration in determining whether the same inferences which might be drawn as to other third-party agreements should be drawn here." *Id.* at 470. Thus, *Lewis* cuts against Veterans' argument that the Funds can be sued under the CBA despite the fact they are not parties to the agreement.

Beyond the fact the Funds are not parties to the CBA, Veterans does not allege that the Funds breached any provision of the CBA. While the CBA defines the scope of the Funds' ability to audit, it does not impose an affirmative duty on the Funds that it now allegedly breached. Further, Veterans alleges the Funds breached the CBA by making inaccurate allegations and asks for damages for injury "to its reputation" from the Funds' allegedly "false allegations." (Countercl. ¶¶ 20-21, Docket # 6.) Veterans alleges breach of contract, not defamation, against the Funds. It is unclear how making inaccurate allegations or damaging Veterans' reputation breached the CBA. Because Veterans' breach of contract counterclaim against the Funds cannot stand, Veterans' motion for judgment on the pleadings and summary judgment on its counterclaim is denied and the Funds' motion for summary judgment is granted. Veterans' counterclaim is dismissed.

2.5 Attorneys' Fees

Finally, in its motion for summary judgment, Veterans asks for an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). ERISA provides that courts may award attorneys' fees to either party in the court's discretion:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). In determining whether to award attorneys' fees, the district court should consider: (1) the degree of the offending parties' culpability; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1090 (7th Cir. 2012). The bottom line question is this—was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent? *Id.* Further, a party is only eligible for an award of attorneys' fees if the party demonstrates it achieved some degree of success on the merits. *Id.* at 1089.

Given that judgment on the pleadings/summary judgment is granted in Veterans' favor dismissing the Funds' Claim Three, Veterans has achieved some degree of success on the merits; thus, I turn to the five-factor test. Veterans asserts that the Funds "blindly" pleaded Claims One and Two, which the Funds subsequently voluntarily dismissed. (Def.'s

14

Br. in Supp. of SJ at 23, Docket # 27.) Veterans further argues the Funds wasted Veterans' time and money and thus it is entitled by statute to recover its attorneys' fees. (*Id.*)

As an initial matter, Veterans is not entitled by statute to recover attorneys' fees. The statute gives the court discretion to award attorneys' fees to either party. Both parties rely on *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 669 (7th Cir. 2007) for support. In *Sullivan*, trustees for a multiemployer pension plan sued an employer under ERISA. The trustees argued that they needed to sue just to be able to discover whether the employer owed contributions because the employer refused to cooperate in their request for a precomplaint audit. *Id.* at 670. The court found that the trustees presented no evidence the employer refused to permit a precomplaint audit and "confused assertion with evidence" that there was any basis for the lawsuit. *Id.* at 670. The court noted that "[o]ne cannot sue, without courting sanctions, unless one has grounds to believe that one has been injured by a wrong committed by the person one wants to sue" and if a prospective defendant takes steps to thwart a precomplaint investigation essential to determining whether grounds exist, pursuant to the CBA and ERISA, the prospective plaintiff can audit the employer's books. *Id.* If the employer refuses to comply, it can seek an order from the court pursuant to ERISA. *Id.*

The Plan conducted an audit of union employees prior to filing this lawsuit; however, it asserted, pursuant to *Centr. States*, that it needed to audit additional records because it "has been long settled in the courts that the Funds have a right to inspect all payroll records of the employer, including the records of employees who are not Fund participants." (Declaration of Philip R. O'Brien ¶ 3, Exh. 1, Docket # 40-1.) While it is a stretch to say that this issue has been "long settled in the courts," especially given contrary

15

authority limiting a trustee's audit ability to the terms of the agreement, I do not believe the Funds' incorrect legal position was wholly without merit. The Plan believed it had grounds on which to sue, and though I hold contrary, *Centr. States* could reasonably be argued to support of the Funds' position. For these reasons, I find the Funds' position substantially justified and will not award attorneys' fees to Veterans.

## CONCLUSION

The issue at the heart of the parties' motions is whether the Funds can audit the records of all of Veterans' employees. The answer to this question lies in the plain language of the CBA, which limits the trustees' audit authority to those employees covered by the CBA. Thus, to the extent an employee is not covered by the CBA, the Funds are not entitled to audit his or her records. For these reasons, the defendant's motion for judgment on the pleadings and for summary judgment dismissing Claim Three of the complaint is granted. Veterans has counterclaimed against the Funds for breach of contract. Because the Funds are not parties to the contract and because Veterans has not shown a breach of the CBA, the defendant's motion for judgment on the pleadings and summary judgment on the counterclaim is denied and the plaintiff's motion for summary judgment dismissing the counterclaim is granted.

The Funds moves to voluntarily dismiss Claims One and Two of their complaint. Because it is procedurally improper to voluntarily dismiss single claims, I deny the Funds' motion to dismiss. However, I will allow the Funds to amend the complaint to delete, with prejudice, Claims One and Two.

Finally, Veterans asks for attorneys' fees in this action. Because I find the Funds' position was substantially justified, the defendant's motion for summary judgment as to attorney's fees is denied.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiffs' motion to dismiss (Docket # 42) is **DENIED**. The plaintiffs are permitted, however, to amend their complaint and dismiss Claims One and Two **WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the defendant's motion for judgment on the pleadings (Docket # 12) is **GRANTED IN PART AND DENIED IN PART**. The defendant's motion is granted in the defendant's favor on Claim Three of the plaintiff's complaint. Claim Three is dismissed. Judgment on the pleadings is denied as to the defendant's counterclaim.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (Docket # 26) is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is granted in the defendant's favor on Claim Three of the plaintiff's complaint. Summary judgment is denied as to the defendant's counterclaim and request for attorneys' fees.

**IT IS FURTHER ORDERED** that the plaintiff's motion for partial summary judgment (Docket # 29) is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is denied as to Claim Three of the plaintiff's complaint. Summary judgment is granted in the plaintiff's favor as to the defendant's counterclaim.

**IT IS FURTHER ORDERED** that the clerk of court will contact the parties to schedule a telephone status conference in this matter to address any outstanding issues.

17

Dated at Milwaukee, Wisconsin this 28th day of September, 2018.

                                    BY THE COURT:

                                    *s/Nancy Joseph*
                                    NANCY JOSEPH
                                    United States Magistrate Judge