# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ELECTRICAL CONSTRUCTION INDUSTRY
PREFUNDING CREDIT REIMBURSEMENT PROGRAM,**
et al.,

    Plaintiffs,

  v.                                     Case No. 17-CV-1576

**VETERANS ELECTRIC, LLC,**

    Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S
## MOTION FOR ATTORNEYS' FEES

Electrical Construction Industry Prefunding Credit Reimbursement Program, a/k/a Electrical Construction Industry Health & Welfare Plan, Electrical Construction Industry Annuity Plan, Electrical Construction Industry Pension Plan, Milwaukee Electrical Joint Apprenticeship & Training Trust Fund, and Electrical Construction Industry Vacation – Holiday Plan (the "Funds"), and Robert Rayburn and Dean Warsh, in their capacity as Trustees of the Funds, commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging in Claims One and Two of their complaint that Veterans Electric, LLC ("Veterans") was delinquent in its payments to the Funds and alleging in Claim Three that Veterans had failed to submit to an audit of its full books and records to determine the amounts due and owing the Funds.

The Funds moved to voluntarily dismiss Claims One and Two of their complaint pursuant to Fed. R. Civ. P. 41(a)(2). I found that it was improper to utilize Rule 41(a)(2) to dismiss single claims as opposed to an action as a whole; however, I allowed the Funds to

amend their complaint pursuant to Fed. R. Civ. P. 15(a) and delete Claims One and Two, dismissing the claims with prejudice. (Docket # 52 at 3.) I further granted judgment on the pleadings (and summary judgment) in favor of Veterans as to Claim Three and dismissed Veterans' counterclaim for breach of contract against the Funds. (*Id.* at 4–13.)

Veterans also asked for an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1) within its summary judgment motion. Both parties briefed the issue within their summary judgment pleadings and I denied Veterans' request for attorneys' fees. (Docket # 52 at 14–16.) After entry of the decision and order, I conducted a telephone conference with the parties. Veterans requested leave to file a separate motion for attorneys' fees, arguing that the five-factor test I applied in deciding the attorneys' fees issue had been abrogated by the United States Supreme Court. (Docket # 53.) I permitted Veterans to supplement its motion, citing the law counsel believed showed the five-factor test had been abrogated. (Docket # 54.) Veterans then requested to withdraw its motion and stated that it would file a separate motion for attorneys' fees. (Docket # 55.)

Veterans filed its separate motion for attorneys' fees, arguing that the Funds' litigation positions were not substantially justified and an analysis of the five factors articulated by the Seventh Circuit favor an award of attorneys' fees to Veterans in the amount of $60,735.00. (Docket # 56, Docket # 57.) The Funds oppose the motion, arguing that Veterans' motion is barred by the law of the case doctrine because the Court already decided the legal issue. (Docket # 58.) The Funds further argue that this Court did not improperly exercise its discretion in determining that Veterans was not entitled to attorneys' fees.

The parties to do not contest that the law previously cited in the summary judgment decision properly states the legal standard for attorneys' fees under ERISA. Again, ERISA provides that courts may award attorneys' fees to either party in the court's discretion:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). In determining whether to award attorneys' fees, the district court should consider: (1) the degree of the offending parties' culpability; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1090 (7th Cir. 2012). The bottom line question is this—was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent? *Id.* Further, a party is only eligible for an award of attorneys' fees if the party demonstrates it achieved some degree of success on the merits. *Id.* at 1089.[1]

I continue to hold that given that judgment on the pleadings/summary judgment was granted in Veterans' favor dismissing the Funds' Claim Three, Veterans has achieved some degree of success on the merits; thus, I again turn to the five-factor test. The Funds do not specifically address the second and fourth factors, focusing instead on the relative merits of its position. Even assuming factors two and four support an award of attorneys' fees, I

---

[1] Veterans argues that given the Supreme Court's decision in *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010), the substantial justification and five factor tests should be discarded. However, given that the Seventh Circuit continues to use both tests after *Hardt*, I am not at liberty to discard either test.

3

continue to find the remaining factors weigh against an award of attorneys' fees. Veterans argues that the first factor weighs heavily in its favor because it did not ask to be sued and defend a baseless claim. (Docket # 57 at 14.) Veterans argues that an award of attorneys' fees will deter other union trust funds by showing "they ought to think twice about using the tactics employed in this case." (*Id.*) As to the final factor, Veterans argues it "prevailed on all three ERISA-related claims. Simple enough." (*Id.* at 15.)

But Veterans' position is not that simple. A losing position may still be substantially justified. *Temme v. Bemis Co.*, 762 F.3d 544, 551 (7th Cir. 2014). What Veterans' argument boils down to is its belief that the Funds acted in bad faith. I disagree. As I previously found, the Plan conducted an audit of union employees prior to filing this lawsuit; however, it asserted, pursuant to *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559 (1985), that it needed to audit additional records because it "has been long settled in the courts that the Funds have a right to inspect all payroll records of the employer, including the records of employees who are not Fund participants." (Declaration of Philip R. O'Brien ¶ 3, Ex. 1, Docket # 40-1.) The Funds cited *Centr. States* in its complaint. (Compl. ¶ 30, Docket # 1.) Again, although I held contrary, *Centr. States* could reasonably be argued to support the Funds' position.

As I previously explained, in *Cent. States*, the question before the Court was whether an employer who participates in a multiemployer benefit plan governed by ERISA must allow the plan to conduct an audit involving the records of employees who the employer denies are participants in the plan. *Id.* at 561. The collective bargaining agreement at issue in *Cent. States* required each employer to make weekly contributions to Central States (the multiemployer benefit plan) for each employee who performed work covered by the CBA.

4

*Id.* at 562. The trust agreement contained a specific grant of power to the trustees to demand and examine employer records. *Id.* at 566. The agreement stated that each employer "shall promptly furnish to the Trustees, upon reasonable demand the names and current addresses of its Employees, their Social Security numbers, the hours worked by each Employee and past industry employment history in its files and such other information as the Trustees may reasonably require in connection with the administration of the Trust." *Id.*

The Court held that the audit requested by the plan was "well within the authority of the trustees as outlined in the trust documents," *id.* at 581, meaning the trustees could audit records of employees who the employer denied were participants in the plan. In so holding, the Court considered the background and purpose of ERISA and noted that ERISA "assumes the trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries, and that trustees will take steps to identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights under the trust's terms." *Id.* at 571–72.

The Court specifically noted, however, that it was not determining whether ERISA would independently confer on the trustees a right to perform the sort of audit demanded in this case in the face of trust documents that explicitly limited the audit powers of the trustees. *Id.* at 581. Notably, in his dissent, Justice Stevens stated that in his opinion, the right to conduct an audit must be granted by contract and is not conferred by ERISA. *Id.* at 583 (Stevens, J., dissenting in part). He stated that his "disagreement with the Court is based on our differing interpretations of the particular contract documents in this case." *Id.* Justice Stevens explained that the term "Employees" was specifically defined in the contract and did not include all employees; rather, the term "Employees" was defined as "persons who

5

are both employed pursuant to the collective-bargaining agreement and covered by the pension plan." *Id.* Thus, Justice Stevens noted that the "trustees have power to audit personnel records only of *covered* employees." *Id.* (emphasis in original).

Thus, although the majority seems to indicate that perhaps ERISA would not grant trustees the right to audit all employee documents if the contract at issue explicitly limited the trustees' audit authority, the documents at issue in *Cent. States* did, in fact (at least according to the dissent), limit the trustees' audit authority. Even so, the Court ultimately held that the trustees could audit records of employees who the employer denied were participants in the plan. Thus, the Funds' reliance on this case was not unreasonable and lacking in merit. Further, given the Funds made a colorable argument, it is unclear the deterrent effect awarding fees will accomplish when Veterans itself acknowledges that union trust funds should "take reasonable positions that test the limits of their legitimate interest and authority to audit employers of their beneficiaries." (Docket # 57 at 14.) For these reasons, the five factors weigh against an award of attorneys' fees to Veterans.

Veterans also relies on *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665 (7th Cir. 2007) and *Temme* in support of its argument that the Funds' position was not substantially justified. As explained in the summary judgment decision, in *Sullivan*, trustees for a multiemployer pension plan sued an employer under ERISA. The trustees argued that they needed to sue just to be able to discover whether the employer owed contributions because the employer refused to cooperate in their request for a precomplaint audit. 504 F.3d at 670. The court found that the trustees presented no evidence the employer refused to permit a precomplaint audit and "confused assertion with evidence" that there was any basis for the lawsuit. *Id.* at 670. The court noted that "[o]ne cannot sue, without courting sanctions,

6

unless one has grounds to believe that one has been injured by a wrong committed by the person one wants to sue" and if a prospective defendant takes steps to thwart a precomplaint investigation essential to determining whether grounds exist, pursuant to the CBA and ERISA, the prospective plaintiff can audit the employer's books. *Id.* If the employer refuses to comply, it can seek an order from the court pursuant to ERISA. *Id.*

Again, the Funds believed, pursuant to *Centr. States*, that it was entitled to audit the records of all the employees, including those who were not Fund participants, and the Funds had a colorable argument pursuant to *Centr. States*.

*Temme* is also inapposite. In *Temme*, the plaintiffs and their employer were parties to a Plant Closing Agreement that promised the plaintiffs certain medical benefits upon retirement. The defendant twice reduced the benefits it provided under the Agreement and the plaintiffs sued, alleging violations of ERISA. The district court granted summary judgment to the defendant, and the defendant subsequently eliminated all medical benefits under the Agreement. The plaintiffs appealed, and the Seventh Circuit reversed, concluding that the parties did intend to provide lifetime medical coverage. 762 F.3d at 546. The case was remanded to determine the level of medical benefits the Agreement mandated and whether the defendant breached the Agreement by its reductions of benefits. *Id.* at 546–47.

On remand, the plaintiffs moved for a preliminary injunction forcing the defendant to restore the benefits it eliminated. Prior to filing the injunction, the defendant had not restored any benefits, despite the Seventh Circuit's ruling that the parties contracted for some level of benefits. The defendant continued to insist that the Agreement did not obligate them to provide the plaintiffs anything. *Id.* at 547. The parties settled on the eve of trial. The plaintiffs moved for attorneys' fees, and the district court granted fees. *Id.* In upholding the

7

award of attorneys' fees, the Seventh Circuit rejected the defendant's position that it initially won summary judgment in finding its position substantially justified and found that considering the entire litigation background, the defendant ceased providing a benefit that the Seventh Circuit had ruled the plaintiffs were "clearly entitled" to receive. *Id.* at 551. Moreover, the court found that even after the Seventh Circuit's ruling, the defendant continued to deny benefits until the plaintiffs moved for an injunction, which the district court granted under the threat of contempt. *Id.*

In this case, the Funds' behavior does not come close to the bad faith shown by the defendant in *Temme*, who intentionally ignored clear Seventh Circuit law and required an injunction to comply with the Seventh Circuit's order. The Funds agreed to dismiss Counts One and Two, with prejudice, after discovery revealed that no further amounts were found owing. While Veterans argues the Funds "blindly plead their first two claims," (Docket # 27 at 23), there is no evidence that the Funds knowingly asserted meritless claims.

As the Seventh Circuit stated in *Raybourne*, the five factor and substantial justification tests "essentially pose the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" 700 F.3d at 1090. I find the Funds' position was substantially justified and taken in good faith. Thus, Veterans' motion for attorneys' fees is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for attorneys' fees (Docket # 56) is **DENIED**. Given no further outstanding issues in this case, the clerk of court is directed to enter judgment consistent with the September 28, 2018 decision and order.

Dated at Milwaukee, Wisconsin this 20th day of November, 2018.

                          BY THE COURT:

                          *s/ Nancy Joseph*
                          NANCY JOSEPH
                          United States Magistrate Judge