UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ELECTRICAL CONSTRUCTION INDUSTRY
PREFUNDING CREDIT REIMBURSEMENT PROGRAM,
et al.,

    Plaintiffs,

 v.                                                 Case No. 17-CV-1576

VETERANS ELECTRIC, LLC,

    Defendant.

---

## DECISION AND ORDER ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

---

Before me is plaintiffs' motion for an award of attorney's fees in the amount of $101,348.70, as well as fees incurred for drafting and filing this motion. (Docket # 76.) Defendant opposes the motion. (Docket # 78.) For the reasons explained below, the motion is granted.

## BACKGROUND

The International Brotherhood of Electrical Workers, AFL-CIO Local 494 and the Electrical Contractors Association Milwaukee Chapter, N.E.C.A., Inc. ("NECA"), entered into a collective bargaining agreement ("CBA") providing health, welfare, and pension benefits for union workers. The Electrical Construction Industry Prefunding Credit Reimbursement Program, a/k/a Electrical Construction Industry Health & Welfare Plan, Electrical Construction Industry Annuity Plan, Electrical Construction Industry Pension Plan, Milwaukee Electrical Joint Apprenticeship & Training Trust Fund, and Electrical Construction Industry Vacation – Holiday Plan (the "Funds") operate as trusts for these

benefits. Veterans Electric, LLC ("Veterans") participated in NECA, assented to the CBA, and contributed to the Funds for its union employees. The CBA makes multiple references to the Funds and details an audit policy.

On November 10, 2017 the Funds filed suit against Veterans pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). (Docket # 1.) In Claims One and Two of the complaint, the Funds alleged that Veterans was delinquent in its payments to the Funds. (*Id.* at 7–9.) In Claim Three, the Funds alleged that Veterans failed to provide the Funds with access to its payroll records, hindering the Funds' efforts to conduct an audit to determine the amount that Veterans owed. (*Id.* at 10–11.)

In the course of discovery, Veterans released the sought-after payroll records; a subsequent audit by the Funds revealed that no contributions were owed. The Funds then moved to voluntarily dismiss Claims One and Two pursuant to Fed. R. Civ. P. 41(a)(2). (Docket # 42.) However, I found it improper to utilize Rule 41(a)(2) to dismiss single claims and thus denied the Funds' motion to dismiss. (Docket # 52 at 3.) Instead, I allowed the Funds to amend their complaint pursuant to Fed. R. Civ. P. 15(a) and delete Claims One and Two and dismiss the claims with prejudice. (*Id.*) Further, I granted judgment on the pleadings (and summary judgment) in favor of Veterans as to Claim Three, finding that the Funds were not entitled to audit the records of all of Veterans' employees. (*Id.* at 11.)

Additionally, I denied Veterans' request for attorney's fees pursuant to ERISA, 29 U.S.C. § 1132(g)(1) and dismissed its counterclaim for breach of contract. (*Id.* at 12–16.) Veterans subsequently filed a separate motion for attorney's fees. (Docket # 55.) Finding that the Funds' position in this litigation was not in bad faith, I also denied this motion (Docket #

60), and judgment was entered (Docket # 61). Veterans appealed the denial of attorney's fees to the Seventh Circuit, while the Funds filed a cross-appeal as to Claim Three.

On October 24, 2019, the Seventh Circuit reversed the judgment and remanded the case to this Court, finding that the Funds' requested audit of Veterans' payroll records was within the authority of the Trustees pursuant to the CBA. *Elec. Constr. Indus. Prefunding Credit Reimbursement Program v. Veterans Elec., LLC*, 941 F.3d 311, 315 (7th Cir. 2019), *reh'g and suggestion for reh'g en banc denied* (Nov. 27, 2019). The Seventh Circuit also denied Veterans' request for attorney's fees and instead found that the Funds could pursue an award of attorney's fees "under the CBA § 14.06 or other sources of law." *Id.* After the remand, the Funds filed this motion for attorney's fees.

## DISCUSSION

The Funds contend that the plain language of CBA § 14.06 compels Veterans to pay their reasonable attorney's fees. (Docket # 80 at 2.) That section reads:

> The Trustees of any fringe benefit fund may, for the purpose of collecting any payments required to be made to such funds, including damages and costs and for the purpose of enforcing rules of the Trustees concerning the inspection and audit of payroll records, seek any appropriate legal, equitable and administrative relief and they shall not be required to invoke or resort to the grievance or arbitration procedure otherwise provided for in this Agreement. In the event it becomes necessary to commence any such legal, equitable or administrative action against any Employer, such Employer shall be obligated to pay to the respective fringe benefit fund, or funds, attorney's reasonable fees, as well as any court reporter fees, filing fees, and the actual costs of effective service of papers.

CBA § 14.06. Alternatively, the Funds argue that they are entitled to attorney's fees pursuant to ERISA's mandatory fee-shifting provision, 29 U.S.C. § 1132(g)(2). (Docket # 80 at 6.) Under that section, a court "shall award [a] plan . . . reasonable attorney's fees and costs of

3

[an] action," if a fiduciary commences action on behalf of the plan to enforce a violation of 29 U.S.C. § 1145 and obtains a judgment in favor of the plan. 29 U.S.C. § 1132(g)(2)(D).

Veterans argues that because the Funds never obtained a judgment in their favor, 29 U.S.C. § 1132(g)(2) is inapplicable. (Docket # 78 at 10.) Further, Veterans asserts that § 14.06 allows the Funds to seek costs *only* if a legal action is commenced based on an employer's failure to make required contributions. Because Veterans was never delinquent in its contributions, there was never a "legal action" related to delinquent contributions, as contemplated by § 14.06. (*Id.* at 17.) Veterans argues that the Funds' only viable opportunity for attorney's fees is pursuant to 29 U.S.C. § 1132(g)(1), which provides that, in its discretion, a court "may allow a reasonable attorney's fee and costs of action to either party," in an action by a participant, beneficiary, or fiduciary.

Veterans' argument that § 14.06 does not require it to pay the Funds' attorney's fees is foreclosed by the plain language of the CBA. Section 14.06 indicates that trustees may seek any appropriate legal, equitable, and administrative relief for two reasons: (1) to collect any payments required to be made to a fringe benefit fund, or (2) to enforce the rules of the trustees concerning the inspection and audit of payroll records. Further, § 14.06 requires ("shall be obligated to pay") that an employer pay reasonable attorney's fees, court reporter fees, filing fees, and actual costs of effective service of papers if the commencement of a legal, equitable, or administrative action by a fringe benefit fund is necessary.

Veterans points out that Section 14 of the CBA is entitled "ENFORCEMENT OF PAYMENTS TO FRINGE BENEFIT FUNDS," and thus argues that § 14.06 addresses only actions related to delinquent contributions, not audits. However, an audit is the very mechanism by which a fringe benefit fund would determine whether contributions were

4

delinquent. Accordingly, the action taken by the Funds in this case falls squarely under § 14.06. The Funds sued in part to compel Veterans to grant the Funds access to its payroll records, as contemplated by the CBA. Furthermore, the Seventh Circuit specifically contemplated that the Funds could seek attorney's fees pursuant to § 14.06 of the CBA. *Veterans Elec.*, 941 F.3d at 315; *see also Bowles v. Quantum Chem. Co.*, 266 F.3d 622, 636 (7th Cir. 2001) (analyzing plaintiff's attorney's fees request pursuant to a severance agreement instead of discretionary fee-shifting provision of ERISA). As a result, I find that the Funds are entitled to reasonable attorney's fees associated with this action pursuant to CBA § 14.06 and I need not address the parties' arguments regarding the applicable fee-shifting provision of ERISA.

Next, Veterans argues that even if the Funds are entitled to attorney's fees, the inadequate documentation submitted by the Funds prevents a determination of the lodestar amount. (Docket # 78 at 17–19.) Additionally, Veterans makes several arguments, based on the lodestar method, for reducing the amount awarded to the Funds. (*Id.* at 19–23.) The lodestar method—calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate—is generally used when determining attorney's fees pursuant to fee-shifting statutes. *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011). In this case, however, attorney's fees are being awarded pursuant to CBA § 14.06—a contract—not pursuant to a fee-shifting statute. When fees are shifted by contract, the applicable standard is one of commercial reasonableness. *Matthews v. Wis. Energy Corp.*, 642 F.3d 565, 572 (7th Cir. 2011) (citing *Balcor Real Estate Holdings, Inc. v. Walentas–Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996)). A determination of commercial reasonableness does not require a "detailed, hour-by-hour review" of a prevailing party's billing records. *Matthews*, 642 F.3d at

5

572. "There is less need to police the reasonableness of fees shifted pursuant to a contract," the Seventh Circuit has opined, "because the parties to a contract expressly consent to and define the terms of the fee shifting." *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1027 (7th Cir. 2013). The goal of the court is to "guard against moral hazard—the tendency to take additional risks (or run up extra costs) if someone else pays the tab." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 200 F.3d 518, 521 (7th Cir. 1999).

Several factors are relevant to the analysis of whether fees are commercially reasonable. For one, a court must consider the "aggregate costs in light of the stakes of the case and opposing party's litigation strategy." *Matthews*, 642 F.3d at 572. The Funds filed suit partly based on the erroneous assumption that Veterans was delinquent in its contributions and partly to gain access to Veterans' payroll records. And the Funds acknowledge that the requested $101,348.70 in attorney's fees is "high with relation to what was being pursued" in this matter. (Docket # 80 at 5.) However, Veterans did pursue a forceful litigation strategy: it filed a motion for judgment on the pleadings, motion for summary judgment, motion for leave to supplement the record prior to judgment, its own motion for attorney's fees, and an appeal to the Seventh Circuit. Therefore, viewed in context, the Funds' request of $101,348.70 is not commercially unreasonable.

Additionally, in support of their motion, the Funds have submitted invoices that include the total fees charged and hours worked by attorneys at Reinhart Boerner Van Deuren s.c. (Docket # 77–2.) The Funds assert that these invoices were all timely paid. (Docket # 81 at 2.) This in itself is a strong indication of commercial reasonableness as "the best evidence of the market value of legal services is what people pay for it." *Balcor*, 73 F.3d at 153; *Matthews*, 642 F.3d at 572 (finding that a party's "willingness to pay" its legal fees when the ultimate

6

recovery of those fees was uncertain indicated commercial reasonableness). Moreover, although Veterans makes several arguments for reducing the amount awarded to the Funds, there is no substantiation that the Funds "r[an] up extra costs," *Medcom Holding Co.*, 200 F.3d at 521, because they knew the fees incurred would eventually be reimbursed.

Finally, it is worth noting that in response to the Funds' motion Veterans has not disclosed its own costs and attorney's fees, which would provide a strong basis to gauge the reasonableness of the Funds' motion. While Veterans is not required to do so, the Seventh Circuit has noted that one of the best ways to demonstrate commercial reasonableness is by comparing the parties' respective legal fees. *Metavante Corp. v. Emigrant Sav. Bank*, No. 05-CV-1221, 2009 WL 4556121, at *6 (E.D. Wis. Nov. 27, 2009), *aff'd*, 619 F.3d 748 (7th Cir. 2010). However, in its previous motion for attorney's fees pursuant to ERISA, Veterans requested an award of $60,735.00. (Docket # 56.) This amount was requested prior to the parties' appeals. With the addition of the appellate litigation, Veterans itself would likely have a bill more in line with the Funds' current fees of $101,348.70. This, too, suggests that the Funds' requested award is reasonable.

In sum, mindful of the court's obligation to guard against moral hazard, I find that the attorney's fees that the Funds seek are commercially reasonable and will therefore grant the Funds' motion.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiffs' motion for attorney's fees (Docket # 76) is **GRANTED**. The plaintiffs are awarded $101,348.70 in attorney's fees, plus the fees incurred to draft and file this motion.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of January, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge